UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

JOSE MIRANDA, JR.,

                    *Plaintiff*,

                                          **MEMORANDUM AND ORDER**

        -against-
                                          22-CV-4358(KAM)

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.

--------------------------------------X


**KIYO A. MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Plaintiff Jose Miranda, Jr.
("Plaintiff") appeals the final decision of the Commissioner of
the Social Security Administration ("Defendant" or the
"Commissioner") finding that Plaintiff is not disabled within
the meaning of the Social Security Act (the "Act") and thus not
entitled to disability insurance benefits ("benefits") under
Title II of the Act.  Presently before the Court is Plaintiff's
motion for judgment on the pleadings (ECF No. 14, "Ptf. Mem."),
and Plaintiff's reply memorandum of law in support thereof.
(ECF No. 16, "Ptf. Reply".)  Also before the Court is the
Commissioner's response to Plaintiff's motion for judgment on
the pleadings and cross-motion for judgment on the pleadings
(ECF No. 15, "Def. Mem.")

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is **GRANTED**, the Commissioner's cross-motion is respectfully **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

### Background

The parties have filed a joint stipulation of relevant facts detailing Plaintiff's medical history, the ALJ's review, and the administrative hearing testimony, which the Court has reviewed and hereby incorporates by reference.  (*See generally* ECF No. 13, Joint Stipulation of Facts, ("Stip.").)  The Commissioner also filed a transcript of the entire record of proceedings relating to Plaintiff's case.  (*See generally*, ECF No. 12, Transcript, ("Tr.").)  Here, the Court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1969 and worked as a printing press operator, janitor, and cubicle installer prior to the onset of his alleged disability.  (Stip. at 3-4.)  Plaintiff filed an application for disability insurance benefits on August 22, 2016 wherein he alleged that the onset date of his disability was June 29, 2016.  (*Id*. at 2.)  Plaintiff's claim was denied on October 25, 2016.  (*Id*.)

On October 31, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id*.)  ALJ Gloria Pellegrino held an in-person hearing on August 1, 2018 and

issued an unfavorable decision denying Plaintiff's application
on October 23, 2018.  (*Id.*)  In her decision, ALJ Pellegrino
engaged in the five-step sequential analysis required by 20
C.F.R. 404.1520(a)(4), and found that at step one, Mr. Miranda
was not engaged in substantial gainful activity since the
alleged disability onset date of June 29, 2016.  (Tr. at 18.)
At step two, ALJ Pellegrino found that Mr. Miranda suffered from
several severe impairments, including alcohol abuse disorder,
post-traumatic stress disorder ("PTSD"), depressive disorder,
anxiety disorder, bipolar disorder, and an abdominal hernia.
(*Id.*)  ALJ Pellegrino found that Mr. Miranda's impairments did
not meet or medically equal the relevant listed impairments in
20 C.F.R. § 404, Subpart P, Appendix 1 at step three of her
analysis.  (*Id.* at 18-19.)  Specifically, ALJ Pellegrino found
that Mr. Miranda's mental impairments, including his substance
use disorder, did not meet listings 12.04, 12.06, or 12.15.
(*Id.* at 18.)  ALJ Pellegrino further noted that Mr. Miranda
maintains the residual functional capacity ("RFC") to perform
light work, as defined in 20 C.F.R. § 404.1567(b), with certain
restrictions.  (*Id.* at 19.)  However, ALJ Pellegrino
acknowledged that Mr. Miranda's "ability to perform all or
substantially all of the requirements of [the relevant] level of
work has been impeded by additional imitations from [his]
impairments, including the substance use disorder."  (*Id.* at

3

23.)  Accordingly, in "considering all of [Mr. Miranda's]
impairments, including the substance use disorder," the ALJ
found that "[Mr. Miranda] is unable to make a successful
vocational adjustment to work that exists in significant numbers
in the national economy" such that "[a] finding of 'disabled'
[would be] appropriate." (*Id*. at 24-25.)  However, ALJ
Pellegrino found that "[i]f [Mr. Miranda] stopped the substance
[abuse], [he] would have the [RFC] to perform light work as
defined in [20 C.F.R. § 404.1567(b)]" with certain limitations.
(*Id*.)  The ALJ determined that if Mr. Miranda "stopped the
substance abuse . . . there would be a significant number of
jobs in the national economy that [he] could perform" and that
Mr. Miranda "would not be disabled if he stopped the substance
abuse." (*Id*. at 29-30.)  Based on this assessment, the ALJ
concluded that Plaintiff is not disabled within the meaning of
the Act. (*Id*. at 31.)

Following ALJ Pellegrino's decision, Plaintiff filed a
request for review before the Appeals Council on December 27,
2018. (Stip. at 2.)  The Appeals Council denied Plaintiff's
request on September 3, 2019, thereby rendering ALJ Pellegrino's
October 23, 2018 decision the final determination of the
Commissioner. (*Id*.)

On October 30, 2019, Plaintiff commenced a federal district
court action pursuant to 42 U.S.C. § 405(g). *Miranda v. Saul*,

4

No. 19-cv-6128 (LDH) ("*Miranda I*").  In that action, the parties
filed cross-motions for judgment on the pleadings (ECF Nos. 12-
14, *Miranda I*) and appeared before Judge LaShann DeArcy Hall for
oral arguments on January 27, 2021.  Judge DeArcy Hall granted
Plaintiff's motion for judgment on the pleadings, denied the
Commissioner's motion for judgment on the pleadings, vacated the
decision of the Commissioner, and remanded the case for further
proceedings.  In so ruling, Judge DeArcy Hall found:

> Plaintiff's treating psychiatrist and therapist, Dr.
> Cotterell, reported in his [RFC] assessment that
> Plaintiff suffers from depressed mood, appetite
> disturbance with change in weight, decreased energy,
> feelings of guilt or worthlessness, and difficulty
> concentrating or thinking; that Plaintiff has marked
> limitations in his ability to understand, remember and
> carry out instructions, maintain attention and
> concentration, sustain an ordinary routine without
> special supervision, and work in coordination with or
> proximity to others and interact appropriately with
> supervisors, coworkers and the public; and that
> Plaintiff has extreme limitations in his ability to
> perform activities within a schedule, make simple work
> related decisions, and perform at a consistent pace and
> respond appropriately to changes in the work setting. In
> making an RFC determination, the ALJ accorded some
> weight to Dr. Cotterell's assessment. The ALJ noted that
> the assessment was of limited value when assessing
> Plaintiff's functioning absent his alcohol abuse because
> Dr. Cotterell's main diagnoses related to mental illness
> induced by alcohol abuse and his assessment [did] not
> indicate whether Plaintiff would [] function[] with such
> extreme limitations in the absence of alcohol. This is
> a question that must be answered. Indeed, the ALJ has an
> affirmative duty to develop the record. *Perez v. Chater*,
> 77 F. 3d 41, 47 (2d Cir. 1996). Based on this gap in the
> record, the Court cannot conclude that the ALJ's RFC
> determination is supported by substantial evidence. . .
> . On remand, the ALJ should more fully develop the record
> as to whether Plaintiff would [] function[] with such

> extreme limitations, as opined by Dr. Cotterell, in the
> absence of alcohol. Upon a complete record, the ALJ
> should make a new finding as to Plaintiff's [RFC] and
> whether Plaintiff's drug and alcohol abuse was a
> contributing factor material to the determination of
> disability.

(Jan. 27, 2021 Min. Entry, *Miranda I.*)

Upon remand, the Appeals Council vacated the previous
decision of the Commissioner and remanded Plaintiff's claim back
to ALJ Pellegrino for a new hearing. (Stip. at 3.) On June 16,
2021 and November 18, 2021, remote hearings were held before ALJ
Pellegrino. (*Id.*) Plaintiff offered his testimony at the June
16, 2021 hearing, whereas consulting psychologist, Gerald
Koocher, PhD, and vocational expert, Raymond Cestar, provided
testimony at the second hearing. (*Id.*) On December 28, 2021,
ALJ Pellegrino again issued an unfavorable decision denying
Plaintiff's claim. (*Id.*)

As in her first decision, ALJ Pellegrino found, at step
one, that Mr. Miranda had not engaged in substantial gainful
activity since the alleged disability onset date of June 29,
2016. (Tr. at 1708.) At step two, the ALJ also found that Mr.
Miranda had several medically severe impairments, including
"alcohol abuse disorder, post-traumatic stress disorder (PTSD),
depressive disorder, anxiety disorder, bipolar disorder, and
abdominal hernia." (*Id.* at 1709.)

At step three, the ALJ determined that "[i]ncluding [Mr.
Miranda's] substance [abuse], the severity of [Mr. Miranda's]

impairments met the criteria of sections 12.04 and 12.06" of the listings included in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)  The ALJ acknowledged that "[Mr. Miranda] has required ongoing treatment for anxiety, depression, and sobriety maintenance despite general sobriety since July 2019" and that "[h]is impairments continue to cause more than minimal functional deficits [even] in the absence of substance abuse and would still be severe." (*Id.* at 1713.)  Nevertheless, ALJ Pellegrino concluded that "[i]f [Mr. Miranda] stopped the substance use, [he] would not have an impairment or combination of impairments that meets or medically equals the severity of" either listing 12.04 or listing 12.06. (*Id.*)  Specifically, the ALJ found that absent any substance abuse, Mr. Miranda had moderate limitations with respect to understanding remembering, or applying information; moderate limitations that affected Mr. Miranda's interactions with others; moderate limitations relating to concertation, persistence, or maintenance of pace; and moderate limitations in adapting or managing himself. (*Id.* at 1713-14.)

At step four, ALJ Pellegrino acknowledged that Mr. Miranda was unable to perform past relevant work and considered that Mr. Miranda would have the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain restrictions if he were to stop abusing substances. (*Id.* at 1714.)

7

Finally, at step five, the ALJ noted that although "[Mr. Miranda] is under a disability . . . a substance use disorder is a contributing factor material to the determination of disability" such that "[Mr. Miranda] has not been disabled under the Social Security Act at any time from the alleged onset date through the date of this decision." (*Id*. at 1707.) ALJ Pellegrino considered Mr. Miranda's "age, education, work experience, and residual functional capacity" to conclude that "there have been jobs that exist in significant numbers in the national economy that [Mr. Miranda] can perform," if Mr. Miranda ceased his abuse of harmful substances. (*Id*. at 1719.) Accordingly, the ALJ found that Plaintiff was "not disabled under sections 216(i) and 223(d) of the [Act]" and was not, therefore, entitled to disability insurance benefits. (*Id*. at 1721.)

Plaintiff filed a timely appeal to the Appeals Council on January 27, 2022 and the Appeals Council denied review on May 26 2022, rendering ALJ Pellegrino's December 28, 2021 decision the final determination of the Commissioner. (Stip. at 3.) On July 25, 2022, Plaintiff filed a timely Complaint in the instant action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision. (ECF No. 1, Complaint, "Compl.")

**Legal Standard**

8

## I.    The Commissioner's Disability Determination

To receive disability benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is considered disabled within the meaning of the Act if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "The impairment must be of such severity that [the claimant] is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)) (internal quotation marks omitted).

In evaluating whether a claimant's condition constitutes a disability within the meaning of the Act and whether the claimant is, therefore, entitled to benefits, the Commissioner conducts a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  Throughout that analysis, the Commissioner must consider "(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . .; and (4) the claimant's educational background, age, and work

experience." *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2010) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original).

At the first step of the Commissioner's five-step sequential analysis, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i).  If not, the Commissioner must next determine whether the claimant has a severe impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  The Commissioner's assessment of severity at the second step is based on the combined effect of all the claimant's impairments, including those that are not considered medically severe.  *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2).  At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets, or medically equals, one of the listings of impairments included in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  The Commissioner then evaluates the claimant's capacity for physical and mental work activities on a sustained basis considering the claimant's impairments.  This is referred to as the claimant's RFC and is defined as "the most [that a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  At the fourth step, the Commissioner considers whether the claimant can engage in past relevant work in light of the claimant's RFC.

*See* 20 C.F.R. § 404.1520(a)(4)(iv).  Finally, at step five, the Commissioner must determine whether the claimant can perform other work that is available in the national economy, taking into account the claimant's RFC, age, education, and past work experience.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

At steps one through four of the sequential five-step analysis, the claimant bears the "general burden of proving that he [] has a disability."  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  Once the claimant has met his burden at steps one through four, the Commissioner bears the burden, at step five, of demonstrating that, notwithstanding the claimant's RFC, age, education, and work experience, he is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## II.  Judicial Review of the Commissioner's Final Decision

Following a final decision of the Commissioner denying a claimant's application for disability benefits, a claimant may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  A reviewing court may not conduct a *de novo* review of the claimant's application.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

11

Nor can the district court "substitute its own judgment for that of the [ALJ]," even if it would have justifiably reached a different conclusion. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation omitted).

Pursuant to 42 U.S.C. § 405(g), a reviewing district court may affirm, reverse, or modify the decision of the Commissioner with or without remanding the cause for a rehearing. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). However, the district court may only set aside the Commissioner's determination that a claimant is not disabled within the meaning of the Act if the district court finds either that the factual findings of the Commissioner "are not supported by substantial evidence" or that the final decision of the Commissioner "is based on legal error." *Burgess*, 537 F.3d at 127 (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 405(g).

"Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). The Commissioner's final decision is based on legal error if the ALJ "[f]ail[ed] to apply the correct legal standard . . . [or] fail[ed] to adhere to the applicable regulations." *Kohler v.*

12

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citation omitted).

Finally, federal regulations explicitly authorize a reviewing district court to remand for further proceedings when appropriate.  *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard[.]"  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  If the record before the reviewing court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the reviewing court may reverse and remand solely for the calculation and payment of benefits.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

## Discussion

Plaintiff contends that the ALJ's decision was not based on substantial evidence and that remand is warranted because (1) the ALJ failed to properly evaluate the medical evidence in the

13

record by failing to adhere to the treating physician rule, and
because (2) the ALJ failed to properly evaluate the required
rubric for determining whether substance abuse is a
"contributing factor" material to the determination of
Plaintiff's disability.  (Ptf. Mem. at 13.)   In response, the
Commissioner argues that (1) the ALJ's decision to assign
"little weight" to the medical opinion of Plaintiff's treating
physician was based on her consideration of the relevant factors
under the treating physician rule and was supported by
substantial evidence, and that (2) the ALJ's determination that
Plaintiff's substance abuse is a contributing factor material to
the determination of his disability is supported by substantial
evidence, including an "extensive discussion of Plaintiff's
impairments when he abused alcohol as compared to periods when
he abstained from alcohol."  (Def. Mem. at 12-13) (internal
citations omitted).

    For the reasons set forth below, the Court finds that ALJ
Pellegrino failed to adhere to the treating physician rule.  The
ALJ's decision to assign "little weight" to the medical opinion
of treating psychiatrist, Dr. Kevin Cotterell, was not based on
substantial evidence, particularly in light of the fact that the
ALJ assigned only "some weight" to the medical opinion of
consulting physician, Dr. Toula Georgiou, thereby discrediting
the medical opinions of the only physicians who examined

Plaintiff, and instead relying only on the testimony of a non-examining psychologist who was limited in his ability to opine on Plaintiff's medication regimen or medical diagnoses.

Not only did the ALJ fail to properly weigh the medical opinions in the record, the ALJ also improperly relied on testimony and evidence regarding Plaintiff's experience of some periods of sobriety to conclude that Plaintiff's substance abuse disorder is a material cause of disability.  In so doing, the ALJ failed to assess whether or how Plaintiff's substance abuse disorder affects, caused, or interacts with his other mental health disorders, including depression, anxiety, and PTSD, as required by Social Security Administration ("SSA") regulations.

**I. The Treating Physician Rule**

For claims filed prior to March 27, 2017, "[t]he law gives special evidentiary weight to the opinion of the treating physician." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  "Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  This principle, known as "[t]he treating physician rule[,] is applicable to claims, such as this one, that were filed before March 27, 2017." *Richards v. Comm'r*

*of Soc. Sec.*, No. 23-486, 2024 WL 1673279, at *2 (2d Cir. Apr. 18, 2024) (citing 20 C.F.R. § 416.927.)[1]

As an initial matter, an ALJ is required to specifically assign "controlling weight" to any treating physician's opinion regarding "the nature and severity of [a claimant's] impairment(s)" where that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

If, however, the ALJ determines that the treating physician's opinion does not warrant controlling weight, the ALJ must "explicitly consider" certain "nonexclusive [] factors" set forth by the Second Circuit in order to determine the appropriate weight to assign to the treating physician's opinion. *Estrella*, 925 F.3d at 95-96 (citing *Burgess*, 537 F.3d at 129.) The *Burgess* factors include "(1) the [frequency], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether

---

[1] As previously noted, Plaintiff applied for disability insurance benefits on August 22, 2016. (Stip. at 2.) Therefore, the treating physician rule applies to Plaintiff's claims, and subsequent changes reflected in 20 C.F.R. § 416.920c, which apply only to applications filed after March 27, 2017, do not affect the Court's consideration of the ALJ's decision with respect to the weight accorded to Dr. Cotterell's medical opinion.

the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

Under the treating physician analysis, both SSA regulations and the Second Circuit require the ALJ to "comprehensively set forth [the] reasons for the weight assigned to a treating physician's opinion." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (internal citation omitted); *see also* 20 C.F.R. § 416.927(c)(2) (An ALJ must "give good reasons in [the] notice of determination or decision for the weight [assigned to the] treating source's medical opinion"). However, the Second Circuit has held that "an ALJ's failure to explicitly apply the *Burgess* factors may be harmless if a 'searching review of the record' reveals that the ALJ applied the substance of the treating physician rule. . . . [and] the ALJ has [] set forth 'good reasons' for assigning little weight to the treating physician's opinion." *Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *2 (2d Cir. Dec. 20, 2022) (quoting *Estrella*, 925 F.3d at 96). If the ALJ fails to provide "good reasons" for discrediting the treating physician's opinion, the Court will remand for the ALJ to "comprehensively set forth [her] reasons." *Halloran v. Barnhart*, 326 F.3d 28, 33 (2d Cir. 2004).

In her December 28, 2021 decision, ALJ Pellegrino assigned "little weight" to the medical opinion of Plaintiff's treating

physician, Dr. Cotterell.  (Tr. at 1718.)  The ALJ explained
that Dr. Cotterell "completed a functional assessment of [Mr.
Miranda]," finding that Plaintiff suffered from "marked
limitations in the ability to understand, remember and carry out
instructions, maintain attention and concentration, sustain an
ordinary routine without special supervision, work in
coordination with or proximity to others, and interact
appropriately with supervisors, co-workers and the public."
(*Id.*)  The ALJ further noted that "Dr. Cotterell found extreme
limitations in [Mr. Miranda's] ability to perform activities
within a schedule, make simple work-related decisions, perform
at a consistent pace, and respond appropriately to changes in
the work setting."  (*Id.*)

Notwithstanding Dr. Cotterell's opinion that Plaintiff
suffers from "significant limitations in many areas of
functioning," the ALJ accorded Dr. Cotterell's opinion even less
weight in her second review of the medical record, as compared
to her first review of the same medical opinion.[2]  In explaining

---

[2] The Court notes that in her first decision, dated October 23, 2018, ALJ
Pellegrino assigned "some weight" to Dr. Cotterell's opinion based on the
short duration of the treatment relationship and the ALJ's finding that Dr.
Cotterell's assessment was "not supported by or consistent with his own
treatment notes," including treatment notes that the ALJ found "generally
reveal benign findings on mental status evaluation."  (Tr. at 28-29.)
Moreover, the ALJ noted that Dr. Cotterell's "assessment [did] not indicate
that [Mr. Miranda] would be functioning with such extreme limitations in the
absence of alcohol."  (*Id.* at 29.)  In her second decision, dated December
28, 2021, ALJ Pellegrino assigned "little weight" to the same opinion based
on the testimony of non-consulting physician, Dr. Koocher, who surmised that
Dr. Cotterell's opinion "appear[ed] to include the adverse effects of

her decision to assign "little weight" to Dr. Cotterell's medical opinion, ALJ Pellegrino expressly referenced the *Burgess* factors, citing the short duration of Dr. Cotterell's treatment relationship with Plaintiff, the fact that "little supporting evidence" existed within the medical record, the "inconsisten[cies] with the medical evidence" in the record, and the lack of "objective support for more than marked deficits and only when including the adverse effects of alcohol abuse." (Tr. at 1718.) Finally, the ALJ alleged that "there is no indication that [Dr. Cotterell] is a specialist. (*Id.*)

Plaintiff argues that the ALJ's decision to assign "little weight" to the opinion of treating psychiatrist, Dr. Cotterell, and only "some weight" to the opinion of consulting physician, Dr. Georgiou, and instead to assign "great weight" to the non-examining medical witness who testified at the November 18, 2021 hearing, Dr. Koocher, misapplies the treating physician rule. (Ptf. Mem. at 15-17.) By contrast, the Commissioner argues that because ALJ Pellegrino explicitly referenced and discussed each of the *Burgess* factors in her December 28, 2021 decision, the

_____

substance abuse," notwithstanding the ALJ's acknowledgement that "[Dr. Cotterell] did not specifically indicate that these marked and extreme limitations were meant to include the adverse effects of alcohol." (*Id.* at 1718.) ALJ Pellegrino also cited the same reasons for her decision, including the short duration of the treatment history and the alleged inconsistency of Dr. Cotterell's opinion with his own treatment notes. (*Id.* at 1718.)

ALJ's conclusion that Dr. Cotterell's medical opinion should be accorded "little weight" was supported by substantial evidence.

### A. Frequency, Length, Nature, and Extent of Treatment

ALJ Pellegrino first cited the fact that "Dr. Cotterell had only treated [Mr. Miranda] for about three months prior to completing the assessment" in support of her decision to assign little weight to Dr. Cotterell's medical opinion.  (Id.)  The ALJ concluded that approximately three months of treatment "does not constitute a meaningful period of treatment."  (Tr. at 1718.)  The Court is inclined to agree.  Plaintiff argues that Plaintiff received treatment for four-rather than three-months, starting in March 2018, but the date of Dr. Cotterell's first treatment evaluation, April 21, 2018, indicates that the records reflect a treatment history spanning three months.  In any case, the Court does not find that this is a meaningful distinction and agrees that the short duration of treatment weighs in favor of the ALJ's finding.

### B. Amount of Supporting Medical Evidence

Second, ALJ Pellegrino concluded that there was no medical evidence supporting Dr. Cotterell's medical opinion.  *See* (Tr. at 1718) (ALJ Pellegrino stated that "[t]here is no objective support for marked or extreme deficits in the absence of alcohol abuse" and that "[e]ven including the effects of alcohol abuse, [Mr. Miranda] is affected by marked deficits at worse.

20

Accordingly, Dr. Cotterell's opinion is largely unsupported regardless of whether it includes the adverse effects of alcohol.")   The Commissioner notes that "[t]he opinion itself was rendered in a check box format with no narrative support for any of the opined limitations" and points to Dr. Cotterell's treatment notes acknowledging periods of "adequate concentration and memory, linear thought processes, fair insight and adequate judgment" as contradictory to Dr. Cotterell's interpretation of his own treatment notes.   (Def. Mem. at 22) (arguing that "there is simply no support in Dr. Cotterell's few treatment notes for the marked and extreme limitations in his opinion.")

ALJ Pellegrino's finding that "[t]here is no objective support" (Tr. at 1718) for Dr. Cotterell's medical opinion is belied by the record.  In his April 21, 2018 opinion, Dr. Cotterell explained that "[Mr. Miranda] presents as manic and possibly mixed," referenced several hospitalizations for depression with suicidal ideation as well as other psychiatric hospitalizations, and also noted that Plaintiff "has recurrent intrusive memories of being sexually molested . . . [and] memories of being sexually abused [that] adversely affect him" in his interactions with his children and his wife.  (*Id*. at 1680-82.)  Dr. Cotterell also stated that Plaintiff suffered from "depressed mood," "appetite disturbance," "decreased energy," "feelings of guilt or worthlessness," "difficulty

concentrating or thinking," "distractibility," "serious and
persistent [mental disorder]," "panic attacks,"
"disproportionate fear or anxiety," and "involuntary, time-
consuming preoccupation with intrusive, unwanted thoughts or
repetitive behaviors." (*Id.* at 1687.)  The foregoing treatment
notes undermine the Commissioner's argument that "there is
simply no support in Dr. Cotterell's [] treatment notes for the
marked and extreme limitations." *See Estrella*, 925 F.3d at 97
("[T]he ALJ's [] cherry-picked treatment notes do not provide
'good reasons' for minimalizing [the treating physician's]
opinion.").

Moreover, the ALJ appears to acknowledge that even in the
absence of substance abuse, Plaintiff suffered from depression
and anxiety, but does not give good reasons for her conclusion
that Plaintiff's depression and anxiety amount to "marked
deficits, at worst" (Tr. at 1718), notwithstanding Dr.
Cotterell's medical opinion that Plaintiff suffers from
"substance [abuse disorder] and mental illness" that are "both
severe," and notwithstanding the treatment records from
Plaintiff's therapy sessions and hospitalizations leading up to
his first visit with Dr. Cotterell on April 21, 2018. (*Id.* at
1613) (March 1, 2018 mental health program session note
describing Plaintiff as reporting "depression and anxiety");
(*Id.* at 1611) (March 31, 2018 session information listing the

22

diagnostic formulation for Plaintiff as including "depression, social anxiety, [and] alcohol dependence"); (*Id*. at 1614) (March 15, 2018 mental health program session note describing Plaintiff as reporting "anxiety in his efforts to function without relapsing).

Importantly, the ALJ fails to consider and potentially misinterprets a key portion of Dr. Cotterell's April 21, 2018 opinion, the conclusion. ALJ Pellegrino states that Dr. Cotterell's opinion "would appear to [refer to] the adverse effects of substance abuse" (*Id*. at 1718.) The ALJ further noted that that because "[Dr. Cotterell] listed substance-medication induced anxiety and alcohol use disorder as [Plaintiff's] impairments with no mention of a diagnosis not related to or caused by substance abuse," the ALJ could safely assume that Dr. Cotterell's opinion regarding Plaintiff's marked and extreme limitations relate only to the adverse effects of alcohol abuse. (*Id*.) But the ALJ failed to consider Dr. Cotterell's explicit diagnosis that Plaintiff "needs addiction treatment as well as mood stabilization/mental health [treatment]" and that "both [Mr. Miranda's] substance use and his mental illness are severe" such that he is a "co-occurring patient." (Tr. at 1682.)

The ALJ's apparent confusion regarding whether Dr. Cotterell's medical opinion refers to marked and extreme

23

limitations only in the context of Plaintiff's alcohol abuse or
whether Dr. Cotterell opined that those limitations apply to
Plaintiff's mental health disorders, separate and apart from his
substance abuse issues, should have been an indication to the
ALJ that further clarification or development of the record was
warranted.  Indeed, this was part of the reason that the
Commissioner's initial decision was remanded by Judge DeArcy
Hall, yet the ALJ failed to clarify or further develop the
record.  *See* (Jan. 21, 2023 Dkt. Entry) ("This is a question
that must be answered.")  On remand, however, the ALJ fails to
address and clarify Dr. Cotterell's diagnosis that Plaintiff
"needs addiction treatment as well as mood stabilization/mental
health [treatment]" and that "both [Mr. Miranda's] substance use
and his mental illness are severe."  (Tr. at 1680.)

Finally, even assuming, *arguendo*, that the Commissioner
believed Dr. Cotterell's opinion included insufficient clinical
findings, this belief triggered the ALJ's duty to further
develop the medical record.  *See Hidalgo v. Colvin*, No. 12-cv-
9009 (LTS), 2014 WL 2884018, at *4 (S.D.N.Y. June 25, 2014)
("The ALJ must contact medical sources and gather additional
information if the ALJ believes that the record is
inadequate.").  Particularly in light of the fact that ALJ
Pellegrino also assigned lesser weight to the only other medical
opinion from a physician that examined Plaintiff, Dr. Georgiou,

24

the ALJ could have fulfilled her responsibility to develop the record by ordering a consultative psychiatric examination or by seeking testimony from Dr. Cotterell or another psychiatric specialist. *See Buonsignore v. Comm'r of Soc. Sec.*, No. 20-cv-4582 (MKB), 2022 WL 4121378, at *5 (E.D.N.Y. Sep. 9, 2022) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . ., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." (internal citations omitted) (alterations in original)).

"[R]emand is not always required when an ALJ fails to request [medical] opinions" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), particularly "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history." *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (internal quotation marks and citation omitted).  Here, however, the Commissioner's argument that Dr. Cotterell's medical opinion included insufficient clinical findings, as well as the ALJ's decision to assign lesser weight to the medical opinions of every physician that treated or examined Plaintiff strongly suggest that there were "obvious gaps in the [] record" and that the ALJ's analysis

25

would have benefited from "seek[ing] additional information."
*Lowry*, 474 F. App'x at 804 (internal quotation marks and
citation omitted).

### C. Consistency with Other Medical Evidence

Third, in noting the alleged inconsistencies between Dr.
Cotterell's medical opinion and the medical record, the ALJ
cites Dr. Koocher's testimony as the sole source of
contradictory medical evidence, which is improper for several
reasons.  First, "the opinion of a non-examining doctor by
itself cannot constitute the contrary substantial evidence
required to override the treating physician's diagnosis."
*Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987).  Dr. Koocher
provided his own assessment of Plaintiff's limitations, which
largely conflicted with the assessment of Plaintiff's treating
physician, Dr. Cotterell, as well as the assessment of examining
physician, Dr. Georgiou, without the benefit of ever having
examined Plaintiff.  Moreover, Dr. Koocher is not qualified to
make any conclusive findings as a "medical professional,"
whereas Dr. Cotterell and Dr. Georgiou are medical doctors with
specializations in psychiatry.  (Tr. at 1734) ("[Dr. Koocher's
testimony is] psychological, not psychiatric. He's not a medical
doctor").

Second, both the ALJ and Dr. Koocher improperly relied upon
Plaintiff's periods of sobriety to discredit the weight of the

26

medical evidence in the record, including the opinions of Dr. Cotterell and Dr. Georgiou and the treatment records from Plaintiff's therapy sessions.  For instance, Dr. Koocher explains that, although "the records from Arms Acres . . . describe [Mr. Miranda] as . . . suffering from [severe] alcohol use [], [moderate] major depressive disorder [], unspecified panic disorder and PTSD," on at least three dates in 2021 (May 14, 2021, March 10, 2021, and during February 2021), the treatment notes suggest that Plaintiff is "clean and sober and [] maintaining good health."  (*Id*. at 1740.)  Dr. Koocher appears to cite Plaintiff's days of sobriety as evidence that Plaintiff's impairments and limitations are not as severe as Dr. Cotterell's medical opinion suggests, stating that "if [Mr. Miranda] were able to remain alcohol-free, then he would not meet a listing in terms of severity."  (*Id*. at 1755.)  Indeed, Dr. Koocher acknowledges a cycle that has affected Plaintiff's life "from high school," by which "[Mr. Miranda] gets a detox, he's doing well, he has renewed self-confiden[ce] . . . [and] go[es] out and look[s] for a job.  And then, some stressor event [occurs] . . . and [Mr. Miranda] relapses."  (*Id*. at 1742.)

The Second Circuit has recognized that "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a

27

period of months or years and to treat them as a basis for
concluding a claimant is capable of working." *Estrella*, 925
F.3d at 97 (internal quotation marks and citation omitted).
Though the Court generally defers to the Commissioner's
interpretation of conflicting medical evidence, the ALJ did not
provide good reasons for concluding that evidence of Plaintiff's
cycle of detoxing, sobriety, relapsing, and alcoholism conflicts
with the medical opinions rendered by the physicians who treated
and examined him.  Indeed, both Dr. Cotterell and Dr. Georgiou
acknowledged that Plaintiff had better days and bouts of
improvement during periods of sobriety, but that Plaintiff still
suffered from significant psychiatric limitations,
notwithstanding the cycle described by Dr. Koocher.  In light of
the fact that Plaintiff's periods of sobriety were considered
and incorporated into the medical opinions to which the ALJ
assigned lesser weight, the ALJ's reliance on Dr. Koocher's
testimony regarding Plaintiff's cycle of sobriety and relapse to
discredit those opinions is not supported by sufficiently
substantial evidence to discredit Dr. Cotterell's medical
opinion on its own.

Moreover, Dr. Koocher acknowledges certain limitations in
his ability to interpret the medical evidence that should have
prompted the ALJ to further develop the medical record.  For
instance, when Dr. Koocher asked whether he could engage in an

28

"analysis [of Plaintiff's impairment] under the listing without considering the substance abuse as the cause or not, meaning just assuming it away," Dr. Koocher confirmed that he could not. (Tr. at 1754) ("No. No.")  When asked if Plaintiff's impairments meet the criteria for any listing in terms of severity, taking into account any and all impairments, whether alcohol-induced or not, Dr. Koocher qualified his answer by noting that "[Plaintiff is] not really receiving treatment except for the prescriptions, and I don't know the basis in which the prescriber's writing them."  (Tr. at 1755.)[3]  Dr. Koocher explicitly acknowledged that he is unclear on how to interpret Plaintiff's continued treatment regimen in 2019, which involved several medications for Plaintiff's mental health disorders, even during periods of sobriety.  (Tr. at 1756) ("I don't know the basis [on] which the prescribers [were] writing the[]" prescriptions."); (Tr. at 1743) ("I do not prescribe. I'm not a physician. I don't prescribe medication.").

Importantly, Dr. Koocher repeatedly affirmed that "the ideal person to give an opinion about the claimant would be a

---

[3] The Court notes that in following up on Dr. Koocher's statement that he did not believe Plaintiff's impairments meet or medically equal a listing even though Dr. Koocher acknowledged that he was not qualified to offer an opinion on Plaintiff's medication treatment, Plaintiff's counsel was cut off from further questioning by ALJ Pellegrino.  (Tr. at 1755) ("Q: Right, but my question was –"; "ALJ: Mr. Bushlow, I believe he's answered your question . . ."; "Atty: with all due respect, I believe he's not answered my question . . . but if Your Honor . . . wants me to move on, I'll let the record speak for itself.").

treating professional." (*Id.* at 1748) (noting that "the treating professional is probably the person who would know best.") This is, of course, consistent with applicable SSA regulations and Second Circuit law. Nevertheless, ALJ Pellegrino afforded lesser weight to the medial opinions of each physician who actually examined Plaintiff, including treating physician, Dr. Cotterell, and failed to adequately develop the record by soliciting a medical opinion from a treating or consulting physician, instead relying only on the contradictory testimony of a non-examining psychologist. Moreover, ALJ Pellegrino's decision to accord "little weight" to Dr. Cotterell's opinion while simultaneously acknowledging that "[Dr. Cotterell] did not specifically indicate that [the] marked and extreme limitations were meant to [refer only to] the adverse effects of alcohol" and ignoring portions of Dr. Cotterell's opinion that suggested otherwise, was erroneous, particularly in light of Judge DeArcy Hall's explicit instructions that "[t]his is a question that must be answered" on remand. (Jan. 21, 2021 Dkt. Entry.)

### D. Whether the Treating Physician is a Specialist

Finally, the ALJ failed to consider the fact that Dr. Cotterell is a psychiatric specialist.[4]  Indeed, the ALJ relied

_____

[4] Plaintiff points out several instances in the medical record where Dr. Cotterell is confirmed to be a psychiatrist. *See* (Ptf. Mem. at 4) (citing Tr. at 1673, 1683-84.)  The Court accepts that Dr. Cotterell is a board—

on the erroneous assumption that Dr. Cotterell is not a
specialist in support of her decision to accord Dr. Cotterell's
medical opinion "little weight."  (Tr. at 1718) ("There is no
indication that [Dr. Cotterell] is a specialist.")  Given ALJ
Pellegrino's reliance on this erroneous assumption to support
her decision and the absence of any medical opinion from a
treating or even examining physician to which the ALJ accorded
more than "some weight," the Court does not find that this error
was harmless.

    Although the Court agrees with the Commissioner that the
short duration of Plaintiff's treatment history with Dr.
Cotterell weighs in favor of the ALJ's assignment of lesser
weight to Dr. Cotterell's opinion, the Court does not find that
ALJ Pellegrino's decision to assign "little weight" to Dr.
Cotterell's medical opinion was supported by substantial
evidence overall, or that ALJ Pellegrino provided good reasons
for her conclusion.  The ALJ's statement that Dr. Cotterell's
opinion was not supported by *any* objective medical evidence is
belied by the record.  The Commissioner did not note any
substantial evidence to override Dr. Cotterell's assessment of
Plaintiff's marked and extreme limitations.  Finally, as noted

---

certified physician that specializes in psychiatry and is, therefore, a
specialist.

previously, the ALJ erroneously assumed that Dr. Cotterell is not a specialist.

On remand, the Commissioner is respectfully directed to consider the fact that Dr. Cotterell is a psychiatric specialist.  The Commissioner's decision to make a final determination regarding Plaintiff's disability status without support of medical evidence from a physician that has examined Plaintiff, while not in and of itself dispositive, warrants further review on remand.  To that end, the Commissioner is also encouraged to further develop the medical record, including by seeking psychiatric and medical evidence, from a medical professional who has treated or examined Plaintiff during the relevant time period within his extensive treatment history.[5]

## II.  **Substance Abuse as a Contributing Factor to Disability**

Although the Court remands on the basis of the ALJ's failure to properly apply the treating physician rule and, therefore, need not address further arguments regarding the ALJ's conclusion that Plaintiff's substance abuse disorder was a material factor in determining disability, the Court respectfully directs the Commissioner to further develop this aspect of the record as well.

---

[5] In light of the ALJ's apparent confusion regarding the correct interpretation of Dr. Cotterell's limitations assessment, the Commissioner is also reminded that she may seek clarification or testimony from Dr. Cotterell.

Pursuant to section 223(d)(2)(C) of the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  If, as here, the ALJ determines that "a claimant is disabled considering all the claimant's impairments as well as the [Drug Addiction and Alcoholism ("DAA")]," *Howard J. v. Saul*, No. 19-cv-1345 (LGF), 2021 WL 978843, at *4 (W.D.N.Y. Mar. 16, 2021), the ALJ must then review whether a claimant's substance abuse disorder is material to the determination of disability pursuant to *Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA)*, *available at* 2013 WL 621536 (SSA Feb. 20, 2013) ("SSA 13-2p").  This rubric entails six factors that the Commissioner should consider in evaluating a substance abuse disorder: "1. Does the claimant have a DAA?"; "2: Is the claimant disabled considering all impairments, including DAA?"; "3. Is DAA the only impairment?"; "4. Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol?"; "5. Does the DAA cause or affect the claimant's medically determinable impairment(s)?"; and "6. Would the other impairment(s) improve to the point of nondisability in the absence of DAA?"  SSR 13-2p.

"The ALJ is permitted to draw inferences from evidence during any periods of abstinence by the claimant including the length and recency of the abstinence period and whether the severity of the co-occurring impairment increased after the period of abstinence ended." *Lacherie C. v. Kijakazi*, No. 20-cv-1212 (LGF), 2022 WL 2948977, at *11 (W.D.N.Y. July 26, 2022). Plaintiff bears the burden of establishing that his substance abuse disorder is immaterial to the determination of disability, just as the claimant bears the general burden of proving, at the first four steps of the five-step sequential analysis, that he is disabled. *See Peter W. v. Comm'r of Soc. Sec.*, No. 20-cv-1551 (TWD), 2022 WL 523744, at *10 (N.D.N.Y. Feb. 22, 2022).

With respect to ALJ's analysis of the materiality of Plaintiff's substance abuse disorder in determining disability, ALJ Pellegrino found that "[i]f [Mr. Miranda] stopped the substance use, [Mr. Miranda] would not have an impairment or combination of impairments that meets or medically equals the severity of one of the [listing] impairments" and would have "the [RFC] to perform light work as defined in [20 C.F.R. § 404.1567(b)]." (Tr. at 1713.) The ALJ acknowledged that "[i]n the absence of substance abuse, [Mr. Miranda] is still affected by anxiety, depression, and PTSD." However, ALJ Pellegrino found that "[Mr. Miranda's] functional abilities improve significantly with sobriety," enough so that "he was able to

34

work during sober periods," although he lost his job due to subsequent hospitalizations and remission. (*Id.* at 1715.) The ALJ noted that Dr. Koocher "summarized [Mr. Miranda's] history [as] indicating that alcohol abuse is a contributing factor to his mental limitations" and that "recent treatment notes indicate that [Mr. Miranda] was stable and in full remission with improved mood in February, March, and May 2021." (*Id.* at 1717.) Dr. Koocher testified that "without the effects of substance abuse, [Mr. Miranda] would be affected by no or mild limitation in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, and maintaining pace," and that Plaintiff "would have moderate deficits in adapting and managing himself without the adverse effects of alcohol abuse." (*Id.*)

The Commission argues that the ALJ's discussion of Dr. Koocher's testimony, Plaintiff's improved condition during periods of sobriety, and the ALJ's ultimate conclusion that, if Plaintiff recovered from his alcoholism, he would not be disabled, are sufficient to establish that Plaintiff's substance abuse disorder is material to the determination of disability. (Def. Mem. at 13-14.) Plaintiff argues that the ALJ neither reviewed nor referenced the six-point rubric required by SSA regulations under SSR 13-2p to evaluate the materiality of his

35

substance abuse disorder, nor did the ALJ consider the substance
of those required factors.  (Ptf. Mem. at 18-19.)

   The Court finds that in light of the ALJ's failure to
properly apply the treating physician rule and adequately
develop the record, there is an insufficient basis for the ALJ's
determination that Plaintiff's substance abuse disorder is
material to determining disability.  The ALJ acknowledged that
even during periods of sobriety, Plaintiff suffered from
depression, anxiety, and PTSD, but that Plaintiff's limitations
while sober did not rise to the level of a severe and marked
limitation.  (Tr. at 1718.)  Therefore, according to ALJ
Pellegrino, absent any alcoholism or substance abuse, Plaintiff
would not be considered disabled.  (*Id.*)  In support of this
conclusion, the ALJ pointed to Dr. Koocher's testimony and
evidence that Plaintiff experienced periods of sobriety where
his overall mental health condition improved.  As noted
previously, however, particularly with respect to mental health
disorders, periods of improvement, without more, are not
conclusive evidence of the overall state of an individual's
mental health disorder.  *See Colgan v. Kijakazi*, 22 F.4th 353,
362 (2d Cir. 2022) ("Cycles of improvement and debilitating
symptoms of mental illness . . . are [a] common occurrence, and
in such circumstances, it is error for an ALJ to pick out a few
isolated instances of improvement over a period of months or

years and to treat them as a basis for concluding a claimant is
capable of working." (internal quotation marks and citation
omitted)).

The ALJ also improperly assigned lesser weight to the
medical opinion of treating physician, Dr. Cotterell, as noted
previously, and assigned lesser weight to Dr. Georgiou's medical
opinion, both of which indicate that both Plaintiff's mental
health disorders and his substance abuse disorder cause
significant limitations.   *See* (Tr. at 275) (opinion of Dr.
Georgiou that "[t]he results of the present evaluation appear to
be consistent with psychiatric difficulties that may
significantly interfere with [Mr. Miranda's] ability to function
on a daily basis."); (*Id.* at 1682) (opinion of Dr. Cotterell
that "[b]oth [Mr. Miranda's] substance use and his mental
illness are severe. He is truly a co-occurring patient.")  In
light of ALJ Pellegrino's assignment of lesser weight to the
medical opinions of Dr. Cotterell and Dr. Georgiou without
subsequently developing the medical record, the ALJ's conclusion
that Plaintiff's substance abuse disorder is material to
determining disability is largely based on Plaintiff's periodic
sobriety, notwithstanding repeated relapses.

Moreover, the ALJ did not consider whether or how
Plaintiff's substance abuse disorder causes or affects
Plaintiff's depression, anxiety, and PTSD, which is a component

of step five of SSR 13-2p.  Particularly in light of the fact
that the ALJ relied upon evidence of Plaintiff's sobriety by
virtue of Dr. Koocher's testimony, assigning lesser weight to
other medical evidence in the record, and in light of
Plaintiff's longstanding, cyclical history of detox, sobriety,
relapse, and alcoholism, the ALJ's failure to consider how
Plaintiff's substance abuse disorder interacts with his mental
health disorders in the context of that cycle is an oversight
that must be reconciled on remand.

In light of the ALJ's failure to properly apply the
treating physician rule, and adequately develop the medical
record, the ALJ's overreliance on the fact that Plaintiff
experienced periods of improved sobriety without more, does not
constitute sufficient support for the ALJ's conclusion regarding
the materiality of Plaintiff's substance abuse disorder in
determining disability.  Upon remand, the Court directs the ALJ
to consider the factors set forth in SSR 13-2p, either
explicitly or in substance, including the factor that asks
whether or how a claimant's substance abuse disorder impacts,
causes, or affects other mental health disorders.

## Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on
the pleadings is **GRANTED** and Defendant's cross-motion for judgment
on the pleadings is **DENIED**, and the case is **REMANDED** for further

proceedings consistent with this Memorandum and Order.  The Clerk

of Court is directed to enter judgment in favor of Plaintiff and

to close the case.


**SO ORDERED**

Dated:      May 8, 2024
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

39